STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-311

THE CLIFF HOUSE AND MOTELS, INC.,

Plaintiff

v.

COMMERCIAL UNION YORK INSURANCE
COMPANY, et al.,

Defendants

ORDER
AND
DECISION

DONALD L. GARBRECHT
LAW LIBRARY

SEP 19 2002

The plaintiff owns and operates a hotel and restaurant in the Town of Ogunquit, and obtained insurance coverage for its buildings through a policy with defendant Commercial Union for the year ending June 5, 2001. One of its buildings was destroyed by fire on December 11, 2000. The parties agree that the destroyed property is to be valued at "actual cash value". See 24-A M.R.S.A. §3004-A. A policy endorsement, following the statutorily mandated language, has defined that term to mean ". . . the replacement cost of Covered Property at the time of loss, less the value of physical depreciation as to the damaged property. The term physical depreciation means a value as determined according to standard business practices."

The parties are largely in agreement. Some of the areas of disagreement will be settled through an appraisal process, while one area of disagreement has been presented to this court. The parties agree that the policy was in effect, that the building was "Covered Property", and that replacement value less physical depreciation is how the amount to be paid should be calculated. While the insured

and the carrier do not agree on what the replacement cost is or what the amount of physical depreciation is, these disputes are to be resolved through an appraisal process which is underway.

The legal issue presented in this case is whether physical depreciation includes a potential deduction for functional or economical obsolescence. The defendants have agreed that they will not request the appraisers to consider any intent that the plaintiff might have had, before the fire, to eventually demolish the covered but now destroyed building.

The plaintiff has filed a motion for summary judgment while the defendants, who are various companies who have been involved with the policy, have filed a motion to continue the plaintiff's motion or, who in the alternative, oppose it.

The building that was destroyed has been described by the president of the plaintiff corporation as a "maintenance/storage/water pumping building." At the time of the fire the plaintiff had a plan to eventually connect to town water, build another maintenance building and, in time, demolish the building involved in this dispute. There was no set time for any of these events to occur and no arrangements had been made to demolish the building.

The key policy provision focuses on replacement cost less the value of physical depreciation. The definition states that physical depreciation means a value as determined according to standard business practices. Two parts of this policy provision resolve the dispute between the two sides. First the policy refers to "physical" depreciation. It does not refer to depreciation or depreciation as it might be calculated for income taxation purposes. The words are "physical depreciation".

2

Those words make sense because the policyholder is to be restored to the position it was in before the covered loss. It would be unjust and not part of the bargain to require the insurance companies to pay for a brand new building to replace one that might have had a roof in need of replacing or windows and floors that had substantial wear and tear. Likewise, it would be unjust and inconsistent with the policy language to consider other forms of depreciation, such as any accelerated tax depreciation or economic of functional obsolescence that was not based on the physical condition, the physical depreciation of the building. I have read the case cited by the defendants. See *Eagle Square Manufacturing Company v. Vermont Mutual Fire Insurance Company*, 212 A.2d 636, 638 (Vt. 1965). That case involved a policy where the carrier was to indemnify for "actual cash value of the property at the time of loss." See page 637. "Actual cash value" was not a defined term. Because it was not defined, and only because it was not defined was the Supreme Court of Vermont able to refer to multiple methods of valuation and multiple factors to be considered such as market value, replacement cost, and functional obsolescence. See page 638.

The second part that matters is the sentence that stated, "The term physical depreciation means *a value* (emphasis added) as determined according to standard business practices." Standard business practices do not determine what is physical depreciation rather they determine how you value it. Presumably there are standard business practices that tell an appraiser how to account for the physical depreciation of a roof, a heating system, pumps or other components of a building or, perhaps, the building as a whole.

3

A fair and straight forward reading of "physical depreciation" is what the plaintiff is entitled to. If the roof was old, the windows and siding were worn or other physical depreciation existed, then a value for that physical depreciation should be calculated according to standard business practices and that sum should certainly be deducted from the amount otherwise payable. If the building was still usable and was being used, then any economic or functional obsolescence of the building does not matter. Any physical depreciation had not progressed to the point where a deduction for physical depreciation had reduced the building's "actual cash value" to zero.

The defendants' motion to continue is now moot as the defendants have been able to gather additional information regarding the plaintiff's motion for summary judgment and as the Court will not rely on the affidavit of the plaintiff's expert, Lawrence Gordon.

The entries are:

Defendants' motion to continue is denied.

Plaintiff's motion for summary judgment is granted in part. On Count I of the complaint it is declared that "physical depreciation" for purposes of insurance policy YMR128858 between the plaintiff and Commercial Union York Insurance Company includes the deterioration of a structure by reason of age and physical wear and tear at the time of loss. Neither functional or other obsolescence, nor the subjective intent of an insured to demolish or abandon the property are relevant factors to be considered in determining "actual cash value" or "physical depreciation." Count II of the complaint is dismissed as moot.

Dated:      September 16, 2002

Michael T. Healy, Esq. - PL
Thomas S. Marjerison, Esq. - DEFS
Aaron K. Baltes, Esq. - DEFS (co-counsel)

Paul A. Fritzsche
Justice, Superior Court

4